IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

UNITED STATES of AMERICA                                  PLAINTIFF/RESPONDENT

V.                          No.  2:10-CR-20024
                            No.  2:13-CV-02001

FERNANDO SANCHEZ-GARCIA                                   DEFENDANT/PETITIONER

## REPORT AND RECOMMENDATION

Before the undersigned for report and recommendation is the petitioner's Habeas Corpus

Petitions, (*ECF No.* 196) filed January 3, 2013, under 28 U.S.C. §2255.  The Government filed a

Response, (*ECF No.* 204) on February 27, 2013 and the Petitioner has not filed a Reply.

### I.  Background

Fernando Sanchez-Garcia and Torrance Bunch were charged in an indictment along with

three other co-defendants. All of the co-defendants were named in Count One of the Indictment,

which charged them with conspiracy to possess with intent to distribute in excess of 500 grams

or more of a mixture of a substance that contained methamphetamine. (ECF No. 1.) Bunch was

also named in Counts Two, Three, and Five of the Indictment with aiding and abetting in the

distribution of methamphetamine. Three of the co-defendants, Charles Crutchfield, Amanda Hall,

and Krysten McConnell, all signed plea agreements and testified against Sanchez-Garcia and

Bunch at a jury trial that was held on November 8, 2010, through November 9, 2010, before the

Honorable Judge Robert T. Dawson in Fort Smith, Arkansas. At the conclusion of the jury trial,

the jury entered  verdicts of "guilty" against Sanchez-Garcia and Bunch on Count One. The jury

also returned verdicts of "guilty" against Bunch on Counts Two, Three, and Five.

-1-

During a sentencing hearing held on February 22, 2011, before the Honorable Judge Robert T. Dawson, Fernando Sanchez-Garcia was sentenced to 324 months in prison. (ECF No. 136.).  On January 3, 2013, Sanchez-Garcia filed this instant Motion to Vacate, Set Aside, or Correct Sentence (Doc. 198.) claiming he received Ineffective Assistance of Counsel for (1) failure to properly investigate his case (Id., p. 4), and (2) improper advice concerning his plea (Id., p. 5).

## II.  Discussion

### A.  Ineffective Assistance of Counsel:

The Sixth Amendment of the Constitution of the United States affords a criminal defendant with the right to assistance of counsel. *U.S. Const. amend. VI.* The Supreme Court "has recognized that 'the right to counsel is the right to effective assistance of counsel.' " *Strickland v. Washington*, 466 U.S. 668, 698, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (citing *McMann v. Richardson*, 397 U.S. 759, 771, n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)).

A defendant "faces a heavy burden" to establish ineffective assistance of counsel pursuant to § 2255.  *DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000);  2254. *Cox v. Wyrick,*  642 F.2d 222, 226 (C.A.Mo., 1981) To establish a claim of ineffective assistance of counsel, the Defendant must satisfy the two-part test set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

First, under the "deficient performance" component, he must show that his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed [him] by the Sixth Amendment." *Strickland*, 466 U.S. at 687. That showing can be made by demonstrating that counsel's performance "fell below an objective standard of reasonableness." *Wiggins v. Smith*,

539 U.S. 510, 522, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003)(internal citations omitted.

Second, under the "prejudice" component, he must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. see also, i.e. *United States v  Ledezma-Rodriguez*, 423 F.3d 830, 836 (8th Cir. 2005)(post-conviction relief will not be granted on a claim of ineffective assistance of trial counsel unless the petitioner can show not only that counsel's performance was deficient but also that such deficient performance prejudiced his defense).

To satisfy this "prejudice" prong, Defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different . . . a reasonable probability [meaning] a probability sufficient to undermine confidence in the outcome." *U.S. v. Rice*, 449 F.3d 887 at 897 (internal quotations omitted). Thus, it is not sufficient for a defendant to show that the error had some "conceivable effect" on the result of the proceeding because not every error that influences a proceeding undermines the reliability of the outcome of the proceeding. *Morales v. Ault*, 476 F.3d 545 (8th Cir.2007) (citing *Odem v. Hopkins*, 382 F.3d 846, 851 (8th Cir.2004)). Additionally, actual prejudice does not exist where a petitioner, at best, suffers the mere possibility of prejudice. *See Wainwright v. Torna*, 455 U.S. 586, 587-88 (1982); *Prewitt v. United States*, 83 F.3d 812, 819 (7th Cir.1996) (mere possibility does not equal actual prejudice). Although the two prongs of the "ineffective assistance" analysis are described as sequential, courts "do not . . . need to address the performance prong if petitioner does not affirmatively prove prejudice." *Boysiewick v. Schriro*, 179 F.3d 616, 620 (8th Cir.1999).

### 1.  Failure to Investigate

The Defendant argues that had "counsel conducted a thorough investigation he may have been able to successfully challenge the government's case against" him. (ECF No. 198, p. 7).  He goes on to state that his attorney's "lack of pretrial investigation cause him to overlook, or pass up a opportunity to discover potential exculpatory evidence". (Id., p. 8).

It is unquestioned that Counsel has a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Whitmore v. Lockhart*, 8 F.3d 614, 618-19 (8th Cir.1993) (*quoting Strickland*, 466 U.S. at 691).  The Defendant, however, does not refer the court to one specific fact that his attorney failed to discover that would have enabled him to successfully challenge the government's case against him nor what specific exculpatory evidence he failed to present at trial. The Defendant  only makes vague and conclusory allegations which are not sufficient to state a ground for relief under 28 U.S.C. § 2255.  *See Hollis v. United States*, 796 F.2d 1043, 1046 (8th Cir.).  *See also  Smith v. United States*, 677 F.2d 39, 41 (8th Cir.1982) (conclusory allegations, unsupported by any specifics, are subject to summary dismissal).  "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal . . . " *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *Voytik v. United States*, 778 F.2d 1306, 1308 (8th Cir.1985); see also *Carpenter v. United States*, 720 F.2d 546 , 548 (8th Cir.1983) (conclusory allegations are insufficient to rebut the presumption of competency granted to defense counsel).

**2. Plea Stage**

The Defendant next argues that his attorney was ineffective at the plea stage of the Defendant's case because he did not give proper advice or guidance to enable him to make an informed decision. (ECF No. 196, p. 5)

-4-

### a. Strength of Government's Case:

The Defendant contends that his attorney was ineffective because he did not explain to him that "statements of co-conspirators made against him and that was testifying on behalf of the government was enough evidence to prove that he was involved in a drug conspiracy with others to distribute methamphetamine." (ECF No. 198, p. 9-10).

It became evident that a co-conspirator, Amanda Hall,  would testify on October 6, 2010 when she entered a Plea Agreement (ECF No. 69) and appeared before the court and changed her plea to Guilty.  The Plea Agreement specifically provided that she agreed to "fully, voluntarily and truthfully cooperate with the Untied States and disclose all information which the defendant possesses relating to the activities set forth in the Indictment and all other information concerning any criminal activity which is the subject of investigation by any law enforcement agency." (Id., ¶23).

Mr. Honeycutt's affidavit (ECF No. 204-1) explains that he met with his client on numerous occasions and specifically met with him and reviewed the Plea Agreement offer from the Government (ECF No. 204-2) on October 6, 2010. Mr. Honeycutt states that he went over every aspect of the Plea Agreement with an interpreter and explained the elements of the offense again and the proof that the government would present. The Defendant acknowledges in his affidavit admits that the Government made this offer to him. (ECF No. 198-1, ¶2).  At this time Ms. Hall had already entered her change of plea. Mr. Honeycutt states that he advised the Defendant to accept the plea but he refused.  The court also notes that Defendant Crutchfield and Defendant McConnell had entered pleas as well.

In addition a Pre Trial Conference was conducted on October 13, 2010 in which Mr.

Chronister, the attorney for co-defendant Torrance Bunch, had filed a Motion to Withdraw, because he had jointly represented Ms. Hall and Mr. Bunch in a related state court proceeding.[1] The Defendant was present with his attorney during this Pre Trial Conference when Mr. Chronister made it clear that Ms. Hall was going to testify. (ECF No. 163, p. 3).

In addition the Affidavit attached to the Search Warrant stated, inter alia, that:

> On December 16, 2009, the 12th Judicial Drug Task Force (DTF) conducted a controlled purchase of methamphetamine from 1601 South 28th Street, Fort Smith, Arkansas and subsequently received a state search warrant for the residence.  Upon execution of the search warrant officers located Fernando GARCIA, Torrance BUNCH, and Amanda HALL inside the residence.  GARCIA was in possession of approximately two ounces of methamphetamine that he attempted to flush in a toilet.  Also located and seized during the search of the residence was approximately $14,000.00 United States Currency, which included $100 of pre-recorded  DTF buy money, fifteen cellular phones, paraphernalia, digital scales, and packaging material.  Your affiant conducted a Post-Miranda interview of BUNCH at the residence and BUNCH admitted he used and sold methamphetamine since being released from prison.  BUNCH denied any knowledge of or involvement with GARCIA and did not know why he was at the residence.  HALL refused to cooperate with law enforcement and GARCIA denied any knowledge of or involvement with BUNCH or HALL.  (ECF No. 4-1, ¶5).

The same affidavit also referenced CD1 who stated that he/she "was aware that GARCIA was a methamphetamine trafficker and had observed GARCIA receive approximately six multi-pound shipments of methamphetamine in Fort Smith, Arkansas within the previous year." (Id., ¶6).  The same affidavit also referenced CD2 who stated "in December 2009 he/she and another person transported a pound of methamphetamine to Fort Smith, Arkansas and delivered it to GARCIA."  (Id., ¶10).

The Defendant's representation that his attorney advised him that the government did not

---

[1]State of Arkansas v. Torrance Bunch and Amanda Hall, Sebastian County Arkansas, CR 2009-1395.

have sufficient evidence to convict him because "the government produced no physical evidence" is not believable.  Mr. Honeycutt states under oath that "he explained to him the elements of the offense with which he was charged and I also explained to him the proof the government would present to prove each of those elements.  (ECF No. 204-1, p. 1).  Mr. Honeycutt states that he advised the Defendant to accept the government's plea offer and enter a plea but the Defendant refused. (Id.).

### b.  Acceptance of Responsibility

The Defendant also argues that his attorney was ineffective because he did not explain the "fact that he would have been awarded three levels off his base offense level for accepting his responsibility for the offense charged against him." (ECF No.. 198, p. 10).

This argument has no merit because the Plea Agreement proposed by the Government specifically stated that they would not "object to a finding by the probation office or a ruling of the Court which awards the defendant an appropriate-level decrease in the base offense level for acceptance of responsibility.  If the offense level in the Presentence Report is 16 or greater, and the Presentence Report awards two points for acceptance of responsibility, the United States agrees to move for an additional one-point reduction for acceptance of responsibility for a total of three points." (ECF No. 204-2, ¶17).

Mr. Honeycutt's affidavit makes it clear that he presented the proposed Plea Agreement to the Defendant on October 6, 2010, went over it with him with an interpreter, and that the Defendant rejected the Government's proposal. There is never any indication that the Defendant was willing to accept responsibility for his criminal behavior.  He denied any involvement at the time of arrest. The case was initially set for trial on July 14, 2010 (ECF No. 16) and continued for

trial on June 30, 2010 to October14, 2010. (ECF No. 45).  Three of the named Defendant's entered a change of plea shortly prior to the October 14th trial date (ECF No. 69, 71,77) but the Defendant continued to refuse to accept responsibility. He maintained that position through trial and appeal and only now does he contend that he would accepted responsibility.  In *Sanders v. United States*, 341 F.3d 720, 723, (8th Cir. 2003), the Court of Appeals stated, "A defendant who maintains his innocence at all the stages of his criminal prosecution and shows no indication that he would be willing to admit his guilt undermines his later § 2255 claim that he would have pleaded guilty if only he had received better advice from his lawyer."

**B.  Revisit Plea:**

The Defendant's final claim is merely a restatement that the plea stage of his case was "totally ruin [sic] by counsel incompetent assistance" and he is petitioning the court to allow him to "revisit plea stage". (ECF No. 196, p. 7).  This claim is without merit and has been addressed above.

### III.  Conclusion

Based upon the forgoing I recommend that the instant motion, filed under 28 U.S.C. §2255 be dismissed with prejudice.

**The parties have fourteen days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. Section 636(b)(1).  The failure to file timely written objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

-8-

DATED this March 21, 2013.

*/s/ J. Marschewski*

HONORABLE JAMES R. MARSCHEWSKI
CHIEF U. S. MAGISTRATE  JUDGE